UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARY ANN WILLIAMS,

      Petitioner,

v.                                       Case No. 3:18cv1513-RV-HTC

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Mary Ann Williams, proceeding *pro se* and *in forma pauperis*, filed a petition under 28 U.S.C. § 2254 by delivering it to prison mail officials on July 3, 2018. ECF Doc. 1. She filed an amended petition on August 7, 2018. ECF Doc. 6. Her federal petitions raised one claim: that her counsel was ineffective in advising her to reject the plea agreement in favor of an open plea of guilty. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the amended petition, the State's response (ECF Doc.

22), and giving Williams a chance to reply,[1] the undersigned recommends the
Petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    The Offense And Conviction

Williams was charged with Robbery Armed with a Firearm, Armed
Kidnapping with a Weapon, and Battery for kidnapping and robbing a woman at gun
point from a Wal-Mart parking lot on December 30, 2013. ECF Doc. 22-1 at 17.
Williams asked for a ride from the victim, and after being driven around for a while,
pulled a gun and put it to the victim's head, forcing her to withdraw money from a
drive-up ATM, and firing the gun to threaten her. *Id.* at 23-24. On September 2,
2014, she pled no contest to a lesser included offense without a plea agreement upon
the advice of counsel. *Id.* at 76. Her criminal scoresheet, based on her twenty-four
(24) previous felonies, set her recommended imprisonment at 168 months, and she
was sentenced to eighteen (18) years imprisonment on November 5, 2014. *Id.* at 61.

### B.    Postconviction Proceedings

Williams's counsel filed a notice of appeal on November 19, 2014, ECF Doc.
22-1 at 55, but eventually submitted only an *Anders* brief.[2] The First District Court

---

[1] On June 3, 2019, the Court gave Williams thirty (30) days to file a reply. ECF Doc. 23. Williams did not file a reply.
[2] *Anders v. California*, 386 U.S. 738 (1967) (appellate counsel's motion to withdraw based on frivolity of appeal must be accompanied by a brief outlining the case and any potential [albeit possibly frivolous] grounds for appeal; appellate court must independently review the brief; and appellant must be given chance to submit *pro se* appellate brief).

of Appeal ("First DCA") reviewed the *Anders* brief and gave Williams a chance to file a *pro se* brief, but Williams did not do so. The First DCA *per curiam* affirmed without written opinion on May 27, 2015. ECF Doc. 22-2 at 4. The mandate was issued on June 23, 2015. *Id.* at 6.

Williams then filed a *pro se* Motion to Reduce Sentence under Fla. Crim. P. 3.800(c) on July 14, 2015, arguing that she should be released due to multiple serious illnesses. ECF Doc. 22-2 at 8. The state court denied the motion on July 28, 2015. ECF Doc. 22-2 at 24. Williams did not appeal the denial.

On April 14, 2016, Williams filed a motion for postconviction relief under Fla. R. Crim. P. 3.850. ECF Doc. 22-3 at 12. She raised one issue: counsel was ineffective for advising her to reject an alleged offer from the State for a 10-year plea in favor of an open plea before the court. Williams claims counsel advised her to reject the offer because she could get a better sentence due to her medical issues and character witnesses. *Id.* at 15-16.

The state court appointed a public defender for Williams and granted an evidentiary hearing at which Williams, her prior counsel, and Williams' daughter testified. ECF Doc. 22-3 at 38 (transcript of evidentiary hearing). The state court denied the 3.850 motion on June 1, 2017. *Id.* at 67. Williams timely appealed. *Id.* at 71. The First DCA *per curiam* affirmed without written opinion on June 5, 2018. *Id.* at 111. The mandate was issued on July 3, 2018. *Id.* at 114.

### C.     The Petition Is Timely Filed

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year limitations period for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). The period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" (unless one of the later dates enumerated in the statute applies – which they do not here). *Id.* § 2244(d)(1)(A). The limitations period is tolled for the time during which a "properly filed" postconviction motion is pending in state court. *Id.* § 2244(d)(2). The instant federal petition is timely filed because it was filed within one (1) year of when Williams's judgment became final, excluding any tolled time.

Williams's conviction became final, for purposes of § 2244(d)(1), upon expiration of the 90-day period in which she could seek direct review of her conviction in the United States Supreme Court. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006). The *per curiam* opinion in Williams's direct appeal, affirming the judgment of conviction, was entered May 27, 2015. Thus, Williams's judgment became final 90 days later, on August 25, 2015. *See Chavers*, 468 F.3d at 1275 ("the entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A)").

Williams filed her 3.800(c) motion on July 14, 2015, which was denied on July 28, 2015, and Williams did not appeal.  The motion was considered pending until thirty (30) days later, August 27, 2015, when the time to appeal expired.  *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383-84 (11th Cir. 2006) (holding that Florida prisoner's postconviction motion remained "pending" under § 2244(d)(2), until the appeal period expired).  Because the 3.800 motion was pending until after the direct appeal was final, no days ran on the one-year time limit until August 27, 2015.

The one-year time limit then ran until April 14, 2016 (231 days) when Williams filed a 3.850 motion.  The time limit was tolled until July 3, 2018, when the mandate of the First DCA affirming the denial of the 3.850 motion was issued.  *See King v. Sec'y, Fla. Dept. of Corr.*, 2017 WL 6760186, *1 (11th Cir. Jan. 5, 2017) (holding federal one-year period is tolled upon properly filed postconviction motion and, if the defendant appeals, remains tolled until the appellate court issues its mandate).  The federal petition was filed that day, July 3, 2018, after the expiration of only 231 un-tolled days of the one-year time limit have run.

## II.    STANDARDS OF REVIEW

### A.    Federal Review Of State Court Decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting habeas relief unless the state court's decision (1) "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000). *See id*., at 412-13 (O'Connor, J., concurring). Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010). Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the . . . case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

### B.    Legal Standard For Ineffective Assistance Of Trial Counsel

The single ground in the amended petition involves a claim of ineffective assistance of trial counsel ("IATC").  ECF Doc. 6.  To prevail on this claim, Williams must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.* at 690.  The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome."  *Id.* at 694.  To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied.  *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)), *cert. denied*, ––– U.S. ––––, 137 S.Ct. 819 (2017).  However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other prong.  *Id.*

## III.    DISCUSSION

As stated above, Williams's sole ground for relief is that "she rejected the state's 10 (ten) year plea offer solely on the [advice] of counsel . . . that she would not receive a sentence greater than but less than 10 years if she pled open to the court due to her medical history and character witness testimony."  ECF Doc. 6 at 10. Although Williams raises this claim as a single ground, the undersigned will break down the discussion into two parts: (1) IATC with regard to rejecting the 10-year plea and (2) IATC with regard to entering an open plea of guilty.

Williams exhausted this claim by raising it in her state court Rule 3.850 motion.  *See* ECF Doc. 22 at 21.  Because the First District issued a *per curiam* affirmance without a written opinion of the denial of Williams's Rule 3.850 Motion, ECF Doc. 22-3 at 111, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  Here, that last decision comes from the Order Denying Defendant's Motion for Postconviction Relief.  ECF Doc. 22-3 at 67.

In the state court's order, the state court summarized the testimony from counsel, Williams and Williams' daughter as follows:

> At the evidentiary hearing, Defendant testified that counsel told her that the State made an offer for 10 years. She also testified that she found out later that the State did not make the offer, but she later testified that she was not aware that the State never made the offer. She

further testified that she assumed that counsel did not think she would get more than 10 years if she rejected the offer and that, if she had known the importance and significance of the situation, then she would have taken the offer.

Counsel testified that he discussed the scoresheet with Defendant and that Defendant scored more than 10 years. He also testified that he did not tell Defendant that the State made an offer for 10 years or advise her to reject the offer because such an offer was never made.

Defendant's daughter testified that, when she asked counsel what Defendant was facing, counsel told her that Defendant would not get more than 10 years. She also testified that, based on that conversation, she talked Defendant into entering the plea.

ECF Doc. 22-3 at 68-69 (citations omitted). After summarizing the testimonies, the court stated that it found counsel's testimony "more credible," and thus found "that Defendant has not demonstrated that counsel's performance was deficient." *Id.*

## A.    IATC For Failing To Communicate State's Ten-Year Plea Offer

The *Strickland* standard applies to ineffective assistance of counsel claims arising out of the plea process, including to the negotiation and consideration of pleas that are rejected or lapse. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). "Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). This obligation includes informing a client about formal plea offers presented by the government, and the failure to advise a client about such an offer is ineffective assistance of counsel. *See Missouri v. Frye*, 566 U.S. 134, 144-45 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley*, 751 F.3d at 1222 (quoting *Lafler*, 566 U.S. at 164). However, "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835.

The state court's factual findings were not an unreasonable determination of the facts in light of the evidence presented in the evidentiary hearing. A question of the credibility and demeanor of a witness is a question of fact. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing *Freund v. Butterworth*, 165 F.3d .939, 862 (11th Cir. 1999) (*en banc*)). Under Section 2254(e)(1), "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*); *see also Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning

historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).”), *cert. denied*, 513 U.S. 1161 (1995).

"Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have ‘no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.’" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). This deference applies to a credibility determination that resolves conflicting testimony. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court’s credibility determination and thus credit [the attorney’s] testimony over" the applicant’s testimony."), *cert. denied*, 526 U.S. 1047 (1999).

Williams has not provided clear and convincing evidence that the state court erred in finding the testimony of former defense counsel more credible than that of Williams. As set forth in the state court’s denial of relief, defense counsel testified the State never offered Williams a 10-year plea deal and thus he never told Williams one had been offered. Defense counsel’s testimony at the evidentiary hearing was consistent with a General Affidavit he submitted to the court on August 23, 2016. In the affidavit, counsel averred, "At no time during the pendency of [petitioner’s case] did the State Attorney’s Office offer 10 years; therefore, I never represented

an offer for 10 years DOC to Ms. Williams." ECF Doc. 22-3 at 26. Second, at the evidentiary hearing, trial counsel was asked, "At any point did you ever tell her that the State had offered 10 years?" and counsel answered, "No, I did not." Trial counsel was then asked, "So you did not, then, tell her to reject a 10-year offer because one was never made?" and answered "No." *Id.* at 48. Thus, counsel's testimony was consistent that no such offer existed and therefore he did not represent that one existed.

Unlike defense counsel, Williams's testimony was inconsistent. During the hearing, Williams stated she was in counsel's office when they discussed the plea, *see id.* at 44, but, as pointed out by the State's counsel, in Williams's 3.850 motion she claimed the meeting occurred when she was incarcerated, *see* ECF Doc. 22-3 at 15. Also, during the hearing, she admitted she learned that no offer had been made by the State. ECF Doc. 22-3 at 43-44.

Thus, it was not unreasonable for the state court to find defense counsel's testimony to be more credible. Moreover, the state court's conclusion -- that counsel was not deficient in failing to advise Williams to accept a non-existent offer -- was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d).

**B.    IATC For Advising Williams To Enter An Open Plea**

Williams also argues that counsel erred by advising her to accept an open plea because he thought her medical conditions would cause the judge to give her no or little time.  She claims that counsel told her she had three options: she could go to trial and possibly get life, accept a ten-year deal by the State, or plead open to the court (that is, without a plea agreement).  As to the last option, Williams testified at the evidentiary hearing that counsel told her the following:

> "with all of your medical records and all of your stuff that you have" --because I have a lot of medical issues, and I've had a stroke since I've been in prison. He said he couldn't see -- he could not say that you weren't going to give me any time, but he didn't see you giving me any time, you know, because of my medical status and, you know, how, you know, I couldn't do a lot for myself and stuff.

ECF Doc. 22-3 at 43.

Williams's daughter testified at the evidentiary hearing that she was present during one of the meetings and that counsel said the following:

> I asked him what was she looking at. He advised that the State was asking for a lot of time, but that she had the opportunity to plea out to Judge Flowers. And he said that Judge Flowers was a fair guy and that she was looking at anything from two to ten years. Nothing more. Somewhere -- his exact quote was "somewhere between two to eight, maybe eight, something like that. Maybe ten Nothing more." And we discussed it with our mom and she at that time said, I can't do that much time. But she ultimately accepted doing that much time because she knew that if that was the best that she could get, then she had to accept it. But that is what he brought to her and said that it would be left up to the Judge if she would plea out and that she wouldn't get anything more than ten years. So we were prepared for the ten at the most.

ECF Doc. 22-3 at 59-60.

Williams argues that counsel was ineffective for "misrepresent[ing] the possibility that the Petitioner would not receive anything more than a 10 year sentence" and "had she not relied on the advi[ce] of counsel she would have taken her chances on the uncertainties of the jury." ECF Doc. 6 at 10.

In a case where a guilty plea has been entered, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Stephens v. Sec'y, Fla. Dep't of Corr.*, 678 F.3d 1219, 1225 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 484 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." *Hill*, 474 U.S. at 58. Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. *Id.* at 56-59.

Defense counsel averred in a General Affidavit that he "discussed the Defendant's case at length with Defendant. This discussion included the right to proceed to a jury trial as well as the pros and cons of entering a plea of No Contest. The maximum punishment of life imprisonment was discussed many times with the Defendant and referenced on the record." ECF Doc. 22-3 at 26. He also averred

that he did not advise her that she must accept any plea at all; in fact, he was fully prepared to go to trial. *Id.*

At the evidentiary hearing, he testified that he discussed the case "in great detail" with Williams, including her scoresheet, which came out to 168 months or fourteen years. *Id.* at 47. During the plea colloquy the court informed Williams that no deal was being made by the State and that the sentence was completely "up to me" (meaning the trial court). ECF Doc. 22-1 at 78. Also, Williams's daughter testified that counsel told them that the State was asking for "a lot of time" and that the sentence "would be left up to the Judge." ECF Doc. 22-3 at 59. Williams testified at the plea colloquy that she understood as such. ECF Doc. 22-1 at 78.

As discussed above, Williams has not presented clear and convincing evidence that the trial court was wrong in crediting counsel's testimony. Thus, the court was not unreasonable in finding that Williams was aware that she faced considerably longer than ten years and that nothing less than ten years was guaranteed or even likely.

Also, she has not even offered argument that had counsel's advice been different, she would have been reasonably likely to reject the plea and go to trial. Indeed, although Williams claims "she would have taken her chances on the uncertainties of the jury," her comments, and those of her daughter at the evidentiary hearing, belie that claim. Nowhere in their testimony does either discuss the strength

of any defense that Williams had to the charge.  Moreover a review of the record in this case shows that the evidence against Williams was strong and thus calls into question Williams's assertion that she would have taken her chances.

The affidavit of probable cause supporting the arrest warrant shows that when the victim was shown a line up including Williams, the victim "immediately pointed at the defendant's picture and stated, 'I'm sure.'" ECF Doc. 22-1 at 17-19.  Also, this identification was corroborated by two pieces of evidence.  First, the victim stated that Williams was dropped off in a 1992 white Honda Accord, and police located the vehicle and the owner admitted to dropping off a black female known to her as "Mary" at the Wal-Mart where Williams later met the victim.  Second, the victim stated that her assailant had a foot/ankle brace on her left foot.  When Williams was interviewed by police, she revealed that she had recently had surgery on her left foot, which corroborated the story of the victim.

Moreover, after stating that the parties assumed Williams would get between two to ten years, Williams' daughter testified that Williams "ultimately accepted doing that much time because she knew that if that was the best that she could get, then she had to accept it." ECF Doc. 22-3 at 59.  The only options considered were allegedly accepting a ten-year plea (that actually had never been made) or making the open plea.  Going to trial was never discussed.  Thus, Williams has not shown a reasonable probability that she would have insisted on going to trial if she had been

advised differently and so cannot meet the prejudice prong of *Strickland*.  *See Hill*, 474 U.S. at 59.

Accordingly, the state court's rejection of this claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## IV.   CONCLUSION

For the reasons above, Williams is not entitled to habeas relief on her claim.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Additionally, this Court must consider the deferential standards prescribed by § 2254, particularly where the state court held an evidentiary hearing on the sole claim asserted in this petition.  *See id.*

### B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That the amended petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Williams* 14-CF-98, in the First Judicial Circuit, in and for Okaloosa County, Florida, ECF Doc. 6, be DENIED without an evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 28th day of February, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.